Galveston, Harrisburg & San Antonio Railway Company
v. Julius Snead et al.

No. 249.

1. **When a Passenger is not a Trespasser.**—The wife and child of an employe of a defendant railway, travelling to the point where her husband is at work, without a ticket and without a pass, is not a trespasser, so as to be withdrawn from the protection of the law applicable to other passengers, and damages to the child occasioned by a derailment may be recovered, although before she boarded the train the conductor had stated that he could not take her without a pass; that she was entitled to a pass, and ought to have it.

2. **Conflicting Evidence.**—The testimony as to the injuries received by the child, and as to the alleged negligence of the railway company in failing to properly brace the rails upon a curve, and as to the rate of speed of the trains, being conflicting, the verdict is not disturbed.

3. **Charge—Safety of Passengers.**—"It is the duty of all railway companies to use the greatest care and skill in constructing its roadbed, track, etc., in order to transfer over it safely its passengers, and in like manner to use such care in keeping same in repair as to secure its passengers a safe travel, as the nature of the business reasonably requires to protect the travelling public," approved.

Appeal from Harris. Tried below before Hon. James Masterson.

*W. N. Shaw,* for appellant.—The court erred in the first paragraph of his charge to the jury, because it practically makes defendant an insurer of the safety of passengers.

*James A. Breeding,* for appellees.—The charge of the court is correct. To require a less degree of care and skill on the part of a railway company would be to lay down all safeguards and render the veriest negligence excusable. "The object of the law is to secure the utmost care

and diligence in the performance of their important duties." "In regard to passengers, the highest degree of carefulness and diligence is exacted." Railway v. McGowan, 65 Texas, 640; Railway v. Lockwood, 17 Wall., 357.

GARRETT, Chief Justice.—Action by Julius Snead and Effie Snead, his wife, the father and mother of George Snead, a minor, in their own behalf, and by the said George Snead, by his father, Julius Snead, as next friend, against the Galveston, Harrisburg & San Antonio Railway Company, to recover damages for personal injuries to said minor by a derailment of defendant's train of cars, on which he was a passenger.

Defendant answered by a general denial, and specially, that the mother of said minor, in whose charge he was at the time, was a trespasser on defendant's train, without a ticket, a pass, or permission of any kind; also, that there was nothing in the appearance or condition of defendant's track at the time and place from which said derailment could reasonably have been anticipated.

There was a trial by jury, and upon the verdict of the jury a judgment was rendered for the plaintiff Julius Snead for $1000, and for the minor, George Snead, $2000.

Upon appeal errors have been assigned: (1) that the verdict and judgment are contrary to the law and the evidence upon the issue as to whether or not the minor, George Snead, was injured by the derailment of the train, and because the proof showed that defendant's track was in proper condition and repair; (2) that the court erred in not allowing evidence to show that said minor was a trespasser on the train, by proof that his mother, in whose custody he was, was upon the train without pass or ticket, and without the knowledge or consent of the conductor, who had previously refused to receive her without pass or ticket; (3) that there was error in the charge of the court, because it practically made the defendant an insurer of the safety of its passengers.

*Conclusions of Fact.*—1. On July 7, 1891, Effie Snead, the wife of the plaintiff Julius and the mother of the minor plaintiff George Snead, got on board of defendant's train of passenger cars at Houston with her child, the said George Snead, to go from Houston to East Bernard, a station on the defendant's line of railway, where her husband, the plaintiff Julius Snead, was at work in the employment of the defendant as its agent at said station.

Julius Snead is the father of the said George Snead, and at the time of the accident the latter was about 1 year old. At a curve in the railway near Stella, a station on said railway in Harris County, and between Houston and Stella, the cars were derailed and there was a wreck, and the car in which Mrs. Snead sat with her child was partly turned over. The train

left Houston at 7:30 o'clock in the morning; was due at Chaney Junction at 7:40 o'clock.   Stella was the next station to Chaney Junction, and the wreck occurred at about 9 o'clock in the morning.

2. Mrs. Snead occupied a seat with her child in a passenger car, in which there was quite a number of passengers.  When the wreck occurred the child fell on his back across the arm of a seat, and the mother fell on him.   The child then fell from the arm of the seat to the floor.   There is a considerable conflict in the evidence as to the extent of the injuries received by the child.   Both the mother and Mrs. McDonald, who was a passenger on the train, testify that it was hurt; and the evidence shows, that after the accident the child was not in good health, and was unable to walk or stand alone.   Dr. Daniel testified, that it was suffering from partial paralysis, which he believed to be the result of the injuries received in the wreck as explained to him by the mother.   There was testimony that before the injuries were received the child was in a healthy condition.   On the other hand, there was much testimony by physicians and others that the child was unhealthy and afflicted from its birth.   Dr. Harrison testified, that he examined it before and after the accident, and that its condition was the result of the impoverished and unhealthy condition of its mother, and that it had "corea" or incipient "St. Vitus dance." It is unnecessary to state all the evidence.   We conclude that there was sufficient testimony to support the verdict of the jury with respect to the injuries.

3. The wreck occurred on a curve.   There was evidence that the curve was a sharp curve, and that the cars were being run at a high rate of speed.   Henry Mack, a witness for the plaintiffs, a track walker for defendant at the time of the accident, testified, that in his opinion the curve was not safe for running a train of cars at a high rate of speed, and that to render it reasonably safe where the wreck occurred, it was necessary to brace the rails all along and around said curve with iron braces made and used for said purpose.   One Williamson, a telegraph operator, testified, that he was at the time of the wreck an operator for the Houston & Texas Central Railway at Chaney Junction, where westbound trains of defendant registered; that it was a part of his duty to take train orders to trainmen, and to make bulletins at that point directing the operation of trains; that on that morning he went off duty before the train passed, but before he went off duty he copied a message for the bulletin, signed by defendant's division superintendent at San Antonio, J. T. McQueeney, to the effect that the curve near Stella was in bad order, and pinned it to the register where all trains going west must register.   On the other hand, Mack was contradicted by the road master, general superintendent, and division superintendent as to the necessity for braces to hold the rails together at the curve; and the division superintendent testified, that

he did not prior to the accident issue instructions to the trainmen that. were in effect to look out and run carefully over the portion of the track where the wreck occurred. The engineer testified also as to careful running, and that the train on the curve was going at the rate of eighteen or twenty miles an hour.

Our conclusion is, that the evidence is sufficient to support the verdict of the jury upon the issue also that the accident was the result of the negligence of the defendant in not constructing and maintaining its track in a proper condition, and in running its cars at a high rate of speed on said curve.

4. The evidence shows, that on the morning of the accident, before the train left Houston, while at the depot, some one asked the conductor in charge of the train to carry Mrs. Snead and her baby, stating that she was the wife of the agent at East Bernard, and wanted to go to him. The conductor answered that he could not do it; that if she was the agent's wife she was entitled to a pass and ought to have it. Mrs. Snead also spoke to the conductor, and he told her that he could not carry her without a pass or ticket.

*Conclusions of Law.*—1. Appellant's fourth assignment of error is as follows: " The court erred in not allowing defendant to prove that the minor plaintiff, George Snead, was a trespasser on its cars, by reason of the fact, which defendant offered to prove, that Effie Snead, his mother, was upon the train of defendant without a pass or ticket and against the previous refusal of the conductor to receive her without said pass or ticket, and that she was on said train without the knowledge or consent of the conductor thereof." This evidence, the exclusion of which is here complained of, differs very little from the testimony of the conductor as it appears in the statement of facts, the only difference being that Mrs. Snead was upon the train " without the knowledge or consent of the conductor thereof," which might happen to a passenger regularly provided with a ticket, or who expected to pay his fare when called upon to do so. Mrs. Snead was sitting openly in the car with other passengers, without any attempt at concealment, and if the defendant had been permitted to show the additional facts set out in the bill of exceptions, this would not have shown her to be a trespasser so as to be withdrawn from the protection of the law applicable to the other passengers. Whart. on Law of Neg.; sec. 354.

2. Appellant claims that the following paragraph of the charge of the court practically makes it an insurer of the safety of passengers: " It is the duty of all railway companies to use the greatest care and skill in constructing its roadbed, track, etc., in order to transfer over it safely its passengers, and in like manner to use such care in keeping same in repair as to secure its passengers as safe travel as the nature of the business

reasonably requires to protect the travelling public." We do not think that the charge is fairly subject to the objection. The jury would not understand the word " secure," in connection with the other language of the charge, in the sense contended for.

3. We find the verdict to be sustained by the evidence, and no error for which the judgment should be reversed, so it is therefore affirmed

*Affirmed.*

Delivered September 14, 1893.